[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 227 
On the 27th of August, 1849, Mr. Grant, the plaintiff's assignor, purchased an open account in favor of Grant Allen, against the defendant, the last item of which accrued about seven years before this suit was commenced. At the time of that purchase, Grant and the defendant were indebted to each other in nearly equal sums, upon mutual dealings between themselves. In these mutual dealings, most of the items on both sides accrued within six years before the commencement of this suit, and it is conceded that none of them are barred by the statute of limitations. The statute had run several years against the account of Grant Allen, before the assignment to Grant, but it was not yet barred. At the commencement of the suit it was barred, unless the purchase by Grant brought it into the "mutual, open and current" accounts between him and the defendant, so as to bring it within the section of the statute which declares that "in an action brought to recover a balance due upon a mutual, open and current account, when there shall have been reciprocal demands between the parties, the cause of action shall be deemed to have accrued from the time of the last item proved in the account on either side." (Code of 1851, § 95; 2 R.S., 296, § 23.) Since Mr. Grant bought that account, there have been no dealings between him and the defendant, and it does not appear that the latter ever knew of the assignment until this suit was commenced. Upon this statement the question is, whether the statute of limitations is a bar to the account of Grant Allen. *Page 228 
It is certain that, before the assignment of this account to Grant, it was no part of a mutual, open and current account between him and the defendant, nor was it an account between those parties in any sense. If it ever entered into their mutual accounts, it was when Grant became the sole owner, by virtue of his purchase; and then, instead of being, as it was in fact, the oldest of all the accounts on which the suit was brought, it became the last item, because it was purchased after all the others had accrued. Until then it had not entered into the dealings of the parties at all; and if after that time it be considered a dealing, it was the last they had. Now, the section of the statute which has been referred to declares in terms that the cause of action shall be deemed to have accrued from the time of the last item proved on either side; and if this section applies to such a case as the present, the consequence plainly is, that Grant, by the act of buying in an outstanding account already nearly barred, not only renewed it for six years longer without the defendant's knowledge, but also imparted a similar renewal to all the other accounts between them. It must follow, too, that in any other case where there are mutual accounts between two men, and a balance, large or small, exists in favor of one of them, which is nearly barred by the lapse of time since the last item accrued, the one to whom the balance is due may buy another account of a third person, also nearly barred, and so renew the whole for six years longer. It appears to me that neither the letter nor the policy of the statute leads to such results.
The section quoted speaks only of "mutual, open and current accounts" and "reciprocal demands" between the parties. Upon a reasonable construction this should be held to mean accounts and dealings originally between the parties. If the mere purchase of a claim by one of them brings it within the statute, then it may happen that two persons, who never had a single dealing with one another *Page 229 
may each purchase demands against the other, and each without the other's knowledge, and the statute of limitations will commence to run, not from the time when the demands severally became due, but from the time the last assignment of any one of them was made. If any one of the items of a mutual, open and current account may be of this kind, it is clear that every other may; and such a conclusion, it seems to me, may with safety be denied. I do not say that, where a chose in action is assigned, the debtor and the assignee may not agree to charge and credit it as an item in a running account; but where there is no such agreement, nor even knowledge on the part of the debtor of the assignment, I think the debt retains its original character, subject, as before, to the statute of limitations.
Opposed to the tendency of these remarks, the suggestion may arise, that the account purchased and assigned is to be regarded as having accrued at the time of its original creation, and then, by force of the section under consideration, is drawn into the subsequent mutual accounts between the parties, and thus saved from the operation of the statute. This suggestion, followed to its results, will prove too much. If it should so happen, as we have seen it might, that all the accounts of both sides were purchased, and all of them of more than six years' standing, though recently assigned, upon this theory all of them would be barred. To render the section operative, therefore, in such a case the accounts must be considered as accruing at the time of the sale and assignment of each, and that is directly contrary to the suggestion supposed.
There is nothing in the history or policy of this section to call for the construction which the plaintiff contends for. The English statute of limitations, passed in the reign of James I., contained an exception of "actions which concern the trade of merchandise between merchant and merchant their factors or servants." Our former statute contained an exception in the same words. (1 R.S., 186.) Without *Page 230 
reference to this exception, the English courts held that where there were mutual demands, if any item of the account was within six years before suit commenced, it was immaterial whether the parties were merchants or not, because such new item was equivalent to a new promise reviving the debt. (Catling v.Spaulding, 6 T.R., 189; Buller's N.P., 149; Blanshard onLimitations, 88.) In Catling v. Spaulding, Lord Kenyon said he considered it clearly settled that every new item and credit in an account, given by one party to the other, was an admission of there being an unsettled account between them, to be afterwards ascertained. These remarks are quoted by Chief Justice Savage, in the case of Kimball v. Brown (7 Wend., 322), arising under our former statute. Before the revision, which took effect in January, 1830, the only exception was that of accounts between merchant and merchant; but upon the principle of a new dealing between parties not merchants, which implied a recognition of their mutual open accounts, it was held here, as in England, that the last item within six years drew after it and saved from the statute the items otherwise barred. The section under consideration was adopted in the revision, and it was intended to declare, in a more distinct form, what was believed to be the existing law. (Revisors' notes, 3 R.S., 703.) It cannot fail to be seen that the reason on which both the statute and the previous rule are founded has no application where one of the parties, not dealing with the other, buys a debt against him from a third person; such a transaction of itself implies no recognition of existing mutual unsettled accounts between them. To illustrate: suppose A has an account against B, the last item of which accrued seven years before suit commenced; B has one against A which accrued within three years. Here is a mutual dealing, and the account of B implies a recognition of that of A, and that the one is to compensate the other. But suppose the account which A holds is one he purchased from another person seven years before *Page 231 
suit, of which B knows nothing; or, to put a plainer case, and one more like the present, suppose, after the account of B accrues, A buys a claim against him, and holds no other; is there any reason in saying that the mutual dealings between the parties have recognized that claim, and so saved it from the statute of limitations? It seems to me not. In such a case there are no mutual dealings or accounts in any just sense of the terms.
There is yet another view which seems to me entitled to great weight. But for the Code of Procedure it would have been necessary to sue the account of Grant Allen in their names. The defendant might set off his account against Grant, because Grant was the real owner and the suit was for his benefit. The statute of set-offs in terms gives that right. But could Grant claim that it was a case of mutual, open and current accounts between the parties, so as to save the demand from the statute of limitations? This, I think, would be making a new statute. To my mind it is plain that the plaintiffs in the suit would be barred if the statute were pleaded, and six years had been suffered to elapse since the account matured. There were no mutual accounts between them and the defendant. Now, the Code, it is true, has authorized the assignee to sue in his own name, but this provision goes to the remedy merely. It has neither created nor impaired any rights. The supreme court seems to have considered that the exemption from the statute of limitations, in the case of adverse accounts, is as broad as the right of compensation in the civil law or of set-off under our statute. That is not my view of the question.
The judgment should be reversed, and a new trial granted.